FILED - USDC -NH
2023 MAR 20 AM 11:09

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

---

JB NICHOLAS,

      Plaintiff,

      -against-

SCOTT R. MASON, Executive Director,
New Hampshire Department of Fish &
Game; KEVIN A. JORDAN, Colonel, New
Hampshire Department of Fish &
Game,

      Defendants.

COMPLAINT

---

## INTRODUCTION

1. Americans have the right, under the Constitution, to freedom of expression. We also enjoy the liberty to pursue a professional occupation of our own individual and free choice. U.S. Const., Art. IV, § 2; Amends. I, V & XIV. I wish to exercise these freedoms and work as a fishing guide in New Hampshire. New Hampshire law requires hunting and fishing (but not hiking and camping) guides to have a license. However, New Hampshire's administrative regime for licensing hunting and fishing guides is unconstitutional on its face. That's because it (1) requires consenting to a police investigation; (2) presumptively disqualifies applicants who have previously been convicted of a felony; (3) gives unbridled discretion to the Government officials responsible for issuing guide licenses; (4)

fails to impose any time limits on Government officials to issue or deny guide license applications; and (5) lacks a meaningful administrative hearing or appeal process with the substantive and procedural rules required by the Constitution for fair hearings. Because New Hampshire law criminalizes guiding without a license as a violation, I sue for a court order stopping its unconstitutional enforcement.

## PARTIES

2.   I am the Plaintiff, JB Nicholas. I was convicted of second degree manslaughter in New York in 1991 and sentenced to a maximum of 19 years. I am fully rehabilitated. I discovered many things about myself as I grew and matured in prison, including a gift for language and the law. I served my fellow prisoners as a "jailhouse lawyer." My legal work resulted in the creation of the Nation's first prisoner-run, prisoners' rights organization and greater fairness in parole hearings in New York. I was paroled for good behavior in 2003. I lived in New York City and worked as a paralegal for legendary criminal defense lawyer Ron Kuby. I also attended New York University, graduating in 2006 with a Bachelor of Arts with high honors. Pl.'s Exs. A & B. I considered going to law school. I decided not to because obtaining the required license to practice law from New York or any other state was likely precluded by my felony conviction.

3. Instead of becominging a lawyer, I became a journalist. I built a career as a news photographer and investigative reporter, 2006 to 2022. I was first issued a press credential by the NYPD in 2007 and held it until 2021. Pl's Ex. C. I was credentialed as a journalist by the Secret Service at least seven times. Pl.'s Exs. D-K. I was even credentialed by the Secret Service to cover, and in fact covered, an event at the White House in 2012: President Barack Obama awarding the Presidential Medal of Freedom to Bob Dylan, Toni Morrison and other beloved American icons and idea-makers. Pl.'s Exs. D & E. I was also credentialed by the United Nations to cover the United Nations General Assembly. Pl.'s Exs. L & M. In recognition of these and other achievements, I won the Kathy Acker Award for avant garde journalistic excellence in 2022. Pl.'s Ex. N.

4. My reporting spurred reform of the criminal justice system in New York including enactment of new laws raising New York's age of criminal responsibility to 18; the cancellation of a new $1 billion Rikers Island jail; the reform of New York's parole system; and greater access to drug treatment for prisoners and parolees. My reporting also led to the removal, within hours of its publication, of statutes of Confederate generals Robert E. Lee and "Stonewall" Jackson from the Hall of Fame of Great Americans. While working as a journalist, I

defeated censorship by both Hollywood heavyweight Steven Spielberg and the NYPD. With Joel Kurtzberg of Cahill, Gordon & Reindel, we reformed New York City's official press credentialing process so that the NYPD stopped using it as a tool to censor news reporting. The National Press Photographers Association awarded me a Special Citation for "dedication and perseverance in protecting the rights of journalists" in 2020. Ex. O.

 5. Defendant Scott R. Mason is the Executive Director of the New Hampshire Department of Fish & Game. The New Hampshire Department of Fish & Game is the state agency responsible under state law for issuing hunting and fishing guide licenses in New Hampshire. Mason is sued in his official and individual capacities.

 6. Defendant Col. Kevin A. Jordan is the Chief of Law Enforcement for the New Hampshire Department of Fish & Game. Fish & Game is the state agency responsible for issuing hunting and fishing guide licenses in New Hampshire. He is sued in his official and individual capacities.

## JURISDICTION

 7. This is a civil rights action under the United States Constitution and 42 USC §§ 1983 & 1985. The Court has jurisdiction over this matter pursuant to 28 USC §§ 1331 & 1343.

The declaratory and injunctive relief sought is authorized by 28 USC §§ 2201 & 2202, Rule 57 of the FRCP and 42 USC § 1983.

8. This Court is an appropriate venue for this action pursuant to 28 USC §§ 1391(b)(1-2). Plaintiff demands trial by jury.

## FACTS

9. I was mostly raised by my grandmother, Faye Ruth Austin, in New York. Faye was born on a kitchen table in a farmhouse in Brooksville, Maine, 1925. My middle name is Brooks, after the town. Faye took me with her back to her mother's home in Brooksville when I was a boy, during summers and long vacations. I went fishing for the first time and caught my first fish in Maine. My grandmother was a lifelong amateur photographer. She took a photograph of me posing with my catch outside her mother's house. Thus began my lifelong love for fishing.



10. I also spent parts of my youthful summers at the Curtis S. Reade Boy Scout reservation in New York's Adirondack mountains. There I perfected my fishing skills and learned new skills, including wilderness land navigation, survival and first aid. I also learned how to backpack, camp and climb, among other things. I taught myself how to fly fish for trout when I was 11.



Back home, I kept fishing, camping and backpacking. I liked to be outdoors so much I went solo winter hiking and camping for the first time when I was 14. After earning a high school equivalency diploma in 1990, I enlisted in the US Army Reserve. I completed basic and advanced individual training at Fort Sill, Oklahoma in November 1990.

11. After spending Thanksgiving with my great grandmother and grandmother in Brooksville, I returned to New York and was

arrested. I was convicted after a jury trial of second degree manslaughter. I was sentenced to 19 years. I served 12 2/3. I was paroled for good behavior on Bastille Day, July 14, 2003.

12. I bought a fishing license and fly fishing equipment when I was paroled. I went back to fishing on the opening day of trout season in New York in 2004, April 1. I have fly fished full-time seven months out of each of the last three years, Spring, Summer and Fall. I've fished on rivers across New York, Vermont, New Hampshire and Maine. I can catch trout and salmon almost at will in any river I fish-as long as the water is not too high, too hot or too cold. I am dedicated to catch-and-release fishing. I do not kill anything I catch. In the 3 years I've been fishing full-time, I have caught literally thousands of fish and released all but one.

13. Since I was paroled, I've hiked the Appalachian Trail from Pennsylvania's border with New Jersey all the way to the Kennebec River halfway across Maine. I've thru-hiked the entire Northville-Placid Trail through the heart of New York's Adirondack mountains (the wildest part of America east of Mississippi) six times. I've hiked 27 of the 33 peaks above 3,500 feet in the Catskill mountains in New York and 33 of the 46 above 4,000 in the Adirondacks. I backpacked across the Green Mountains in Vermont, the White Mountains in New Hampshire, the Mahoosuc range in Maine and all the other wild places I could

find between New York City and the Canadian frontier. I explored in all four seasons. I celebrated my 50th birthday by completing a winter traverse of the Great Range in the Adirondacks-the most challenging hike on the East Coast in summer, nevermind in winter when it's encased in ice and snow.



14. I'm an expert fly fisher and experienced wilderness traveler. I also have training and current Red Cross certification in pediatric and adult first aid and CPR. Pl.'s Ex. P. My first aid training and outdoor experience qualifies me to be a licensed New Hampshire fishing guide.

15. As a licensed New Hampshire guide, I would specialize in fly fishing for wild trout and salmon in wild places. Most rivers in New York and New England are dominated by fishing for

stocked trout. Precious few hold enough wild trout to make a viable sport fishery. Yet, if you know where to look, there are some vibrant wild trout rivers. These rivers are found in the most remote parts of New York, Vermont, New Hampshire and Maine. A generational change is underway in fly fishing, fueled by the Wuhan virus pandemic. More and more fly fishers want to fish for wild trout, not stocked ones. I seek to satisfy this demand and literally capitalize on my combination of fly-fishing and wilderness expertise.

16. New Hampshire law requires a license to work as a hunting or fishing guide and penalizes guiding without the required license. "No person shall engage in the business of guiding, until he has registered with the executive director and procured from him a license so to do." RSA 215:1. New Hampshire law defines a "guide" as "Any person who engages for hire, either directly or indirectly, in the business of guiding in this state." RSA 207:1(12). Guiding is "every act whereby a person for hire directs, aids, assists or instructs another person in taking wildlife in this state." RSA 207:1(13). Guiding without a license is outlawed as a violation. RSA 215:9. Violations are arrestable and punishable by conditional discharge and $1,000 fines per violation. RSA 651:2. To be conditionally discharged from custody after arrest, defendants

must agree to comply with certain, specified conditions. Violations can result in criminal contempt and imprisonment.

17. New Hampshire law grants the New Hampshire Fish & Game Department jurisdiction over guide licensing. RSA 215:1. New Hampshire law prescribes the qualifications people seeking a guide license must meet: "A person licensed as a guide shall be at least 18 years of age. He shall furnish such recommendations as the executive director shall require. He shall be skilled in the use, management and handling of such boats or canoes as are customarily used in fishing and hunting, and shall be a safe and competent person under all circumstances to be a guide for hunting or fishing parties."

18. New Hampshire law does not specifically require outdoor guides to be free from felony convictions of any kind.

19. The New Hampshire Fish & Game Department enacted regulations governing the licensing of guides under New Hampshire law. These administrative rules are codified in New Hampshire Code of Administrative Rules PART Fis 1301. The Fish & Game Department regulations impose additional requirements on guide license applicants, beyond those specifically required by New Hampshire statute. NH Admin. Rules PART Fis 1301.02(b)(3) requires applicants for a guide license be "free of any conviction for a felony at any time in any jurisdiction against the person or property of another."

20. Notwithstanding that regulations issued by the New Hampshire Fish & Game Department absolutely and forever bar me from being licensed as a fishing guide in New Hampshire, I applied by email to the Department dated Sept. 16, 2022. Lt. Robert Mancini of the Department of Fish & Game law enforcement division responded by email later that same day: "In accordance with Administrative Rule-Fis 1302.02 (b) (3), your past felony conviction makes you ineligible to become a guide in the State of New Hampshire." Pl.'s Ex. Q.

21. I asked Lt. Mancini if there was any avenue of appeal available to me in an email dated Sept. 16. Lt. Mancini advised that there was not: "In this case your past criminal history prohibits you from becoming a guide in New Hampshire. An appeal process does not exist for your particular situation. The administrative rule that I sent you is clear and that is what all decisions are based on." Id.

22. In response to an inquiry about the apparent discrepancy between New Hampshire statute and the Fish & Game Department's regulations, Lt. Mancini advised me to contact senior assistant New Hampshire attorney general Christopher Aslin. Id.

23. Defendant Jordan emailed me Dec. 20, 2022 and advised me "to complete the application and provide the required proof of the qualifications required to apply for a Guides License."

He further advised "Once this material has all been submitted and reviewed a decision will be made as to the eligibility for a guide's license." Pl.'s Ex.R.

24. The New Hampshire Department of Fish & Game's application for a guide's license includes a "criminal records release authorization form." The form authorizes the New Hampshire State Police to conduct a criminal background investigation and report the findings to the New Hampshire Department of Fish & Game. I submitted an executed authorization, proof of required First Aid and CPR training and a $100 money order to the New Hampshire Department of Fish & Game on Dec. 20, 2022.

25. I also emailed Defendant Jordan proof of my rehabilitation, including 9 testimonials and 13 of the exhibits attached to this complaint, on Feb. 19, 2023. Pl.'s Exs. S-BB.

26. When I submitted proof of rehabilitation I asked in an email dated Feb. 14, 2023 Defendant Jordan for an opportunity to be heard, face-to-face. Defendant Jordan denied my request in an email dated Feb. 16: "We don't necessarily have to meet but getting the records would be helpful when you have a chance." Pl.'s Ex. CC.

27. Defendant Jordan denied my request to be licensed as a New Hampshire fishing guide in an email dated Mar. 14, 2023: "I

am sorry Jason, I wanted to find a way to work around this, I just cannot." Pl.'s Ex. DD.

28. Defendant Jordan admitted the denial wasn't just his decision. It was "the Executive Director as well as the Guide's Association here in New Hampshire.... Everyone has agreed that we should not waive any rules to allow for this under the current situation." He explained further: "We are just concerned as the administrative rules are very clear and waiving those rules would open the door for other people or issues we would not be able to say no, too." Id.

29. Faye, my Maine-born grandmother, had a favorite saying, according to her December 1, 2008 obituary in the *Bangor Daily News*: "Faye was fond of saying 'If you see something that isn't right, do something about it, don't just complain.'"

30. New Hampshire's guide licensing regime is unconstitutional on its face. Because it criminalizes and restricts freedom of speech and occupational liberty, it must pass constitutional scrutiny. New Hampshire's system cannot survive even the least stringent constitutional scrutiny because it is galactically overbroad and structurally defective.

31. New Hampshire's guide licensing regime requires all prospective guides to submit to a criminal investigation by police. NH Admin. Rules Fis 1301.03(A)(9-10). Having to submit to a police investigation before engaging in First Amendment

protected activities, including guiding, is a presumptively unconstitutional prior restraint of expression.

32.  New Hampshire's guide licensing regime creates an absolute and forever bar on licensing anyone with a felony conviction. New Hampshire law requires the rejection of all applications for guide licenses from anyone ever convicted " for a felony at any time in any jurisdiction against the person or property of another." NH Admin. Rules Fis 1301.02(b)(e).

33.  New Hampshire law does not allow for hearings or appeals from denials of applications for guide licenses.

34.  New Hampshire's guide licensing regime is unconstitutionally vague because it confers absolute, unfettered discretion on Government decisionmakers is issue a guide license or not. For example, while the scheme uses mandatory language ("shall," "must" or "will") to mandate denial of licenses to applications who fail to pass a required written test, it does mandate Government decisionmakers to actually issue a license to those that do. NH Admin. Rules Fis 1301.03(e).

35.  New Hampshire guide license applicants must pass what Fish & Game Department regulations call an oral "practical skills examination" as well as a written test to become licensed. NH Admin. Rules Fis 1301.03(d)(1)&(e). Neither New Hampshire's statutes or Fish & Game Department regulations specify the content of the written test or what is considered

passing. Id. The oral examination is administered by a two or three-person panel of active duty or retired game wardens and one licensed New Hampshire guide designated by Defendant Mason or his designee. NH Admin. Rules Fis 1301.03(e)(3). The only sole criteria for the examiners' to apply is "an individual's practical skills, knowledge, and abilities in hunting for a hunting guide license applicant or fishing for a fishing guide license applicant." NH Admin. Rules Fis 1301.03(e)(2). Thus, Government decisionmakers' judgment is again wholly subjective and unchanneled by substantive criteria. For these reasons also, New Hampshire's guide licensing regime confers absolute, unfettered discretion on Government decisionmakers and is unconstitutionally vague.

36. Finally, New Hampshire's guide licensing regime fails to impose a time limit on Defendants to issue or deny a guide license application. It could take as long as the Fish & Game Department wants it to take, or it can be as brief as the Department wants it to be. It could take two years, or two weeks. Relatedly, as noted, guide applicants must pass two tests, one written, one oral, before Defendants will issue a license. NH Admin. Rules Fis 1301.03(d)(1)&(e). However, New Hampshire's guide licensing regime does not specify a time limit for scheduling either of the required tests. In sum, nothing prohibits or prevents Defendants from taking literally forever

to issue a guide license, or not. In this case, it took six months.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

37. New Hampshire's guide licensing regime, as alleged above and incorporated here by reference, violates Plaintiff's First and Fourteenth Amendment rights to freedom of speech and to pursue an occupation of his own free choice because it (1) requires consenting to a police investigation; (2) presumptively disqualifies applicants who have previously been convicted of a felony; (3) gives unbridled discretion to the Government officials responsible for issuing guide licenses; (4) fails to impose any time limits on Government officials to issue or deny guide license applications; and (5) lacks a meaningful administrative hearing or appeal process with the substantive and procedural rules required by the Constitution for fair hearings.

### AS AND FOR A SECOND CAUSE OF ACTION

38. New Hampshire's guide licensing regime, as alleged above and incorporated here by reference, violates Plaintiff's rights under the Constitution's Privileges and Immunities Clause, U.S. CONST., Art. IV, § 2, because it (1) requires consenting to a police investigation; (2) presumptively disqualifies applicants who have previously been convicted of a

felony; (3) gives unbridled discretion to the Government officials responsible for issuing guide licenses; (4) fails to impose any time limits on Government officials to issue or deny guide license applications; and (5) lacks a meaningful administrative hearing or appeal process with the substantive and procedural rules required by the Constitution for fair hearings.

### AS AND FOR A THIRD CAUSE OF ACTION

39. Maine's guide licensing regime, as alleged above and incorporated here by reference, violates Plaintiff's Fourteenth Amendment right to due process of law because it (1) requires consenting to a police investigation; (2) presumptively disqualifies applicants who have previously been convicted of a felony; (3) gives unbridled discretion to the Government officials responsible for issuing guide licenses; (4) fails to impose any time limits on Government officials to issue or deny guide license applications; and (5) lacks a meaningful administrative hearing or appeal process with the substantive and procedural rules required by the Constitution for fair hearings.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests judgment against Defendants:

1. Declaring New Hampshire's guide licensing regime unconstitutional on its face;

2. Enjoining Defendants from enforcing New Hampshire's laws RSA 215:1, 215:9, which punish and subject guides operating without a license to imprisonment via conditional release and contempt of court sanctions until Defendants promulgate regulations that satisfy the Constitution;

3. Compensating Plaintiff for damages, including violations of constitutional rights and lost employment;

4. Any other relief necessary and appropriate to remedy Defendants' ongoing violations of Plaintiff's constitutional rights;

5. Awarding costs to bring and litigate this action;

6. Awarding attorneys fees pursuant to 42 US § 1988; and

7. Such other and further relief as the Court deems just, proper and equitable.

DATED:   March 15, 2023

Pursuant to, and in accordance with, 28 US § 1746:

I swear the foregoing under the penalty of perjury; as to matters alleged upon information and belief, I believe them to be true.

*JBNicholas*

JASON B. NICHOLAS
jasonbnicholas@gmail.com