## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Jason B. Nicholas

     v.                    Case No. 23-cv-196-LM-AJ

Scott R. Mason and
Kevin A. Jordan

## REPORT AND RECOMMENDATION

Plaintiff Jason Nicholas, pro se, filed this 42 U.S.C. § 1983 civil rights lawsuit against New Hampshire Fish & Game Department (the "Department") Executive Director Scott R. Mason and Chief of Law Enforcement Keith A. Jordan. Mr. Nicholas alleges that New Hampshire's statutory and regulatory regime for licensing fishing guides (the "guide license regime"), Revised Statutes Annotated ("RSA") Chapters 207 and 215, and Administrative Rules Fis Chapter 1300 ("Fis"), violates his First and Fourteenth Amendment rights because it categorically disqualifies those convicted of certain felonies. Mr. Nicholas also moves for a preliminary injunction (doc. no. 3) prohibiting the defendants from enforcing the guide license regime.

Defendants move to dismiss (doc. no. 19) Mr. Nicholas's Amended Complaint based on sovereign immunity and for failure to state a claim upon which relief can be granted. They also object to Mr. Nicholas's motion for preliminary injunction. Pursuant to LR 72.1, the motion to dismiss and the motion for preliminary injunction have been referred to the undersigned

Magistrate Judge for a report and recommendation.  For the reasons that follow, the District Judge should grant in part and deny in part defendants' motion to dismiss and deny Mr. Nicholas's motion for preliminary injunction.

## Background[1]

In 1991, Mr. Nicholas was convicted of second-degree manslaughter in New York.[2]  He was paroled, for good behavior, in 2003.  In the 20 years since his parole, Mr. Nicholas has earned a bachelor's degree from New York University and engaged in several different professions, primarily photography and journalism.  The New York Times, TIME Magazine, and the New York Post, among others, have published Mr. Nicholas's work.

Having been a lifelong outdoors enthusiast, Mr. Nicholas has spent much of his time since his parole in the outdoors hiking, camping, and fishing.  He has, to name a few examples,

---

[1] The court draws the background facts from Mr. Nicholas's Amended Complaint (Doc. No. 18) and attachments (Doc. No. 1-1 through 1-30), and it has provided Mr. Nicholas, a pro se litigant, a liberal construction of his pleadings.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] See N.Y. Penal Law § 125.15 ("A person is guilty of manslaughter in the second degree when . . . [h]e recklessly causes the death of another person . . . .").  Mr. Nicholas did not relate the facts underlying his criminal conviction in his Amended Complaint.  A letter of recommendation attached to his complaint indicates that, when he was 19 years' old, Mr. Nicholas unintentionally shot and killed a person who was attempting to rob him.  See Doc. No. 1-28 at 3.

hiked large parts of the Appalachian Trail; climbed many of the largest mountains in the northeast; and backpacked across the Green and White Mountains.  He also loves fly fishing – having done so "full-time" for seven months in each of the last three years.  Am. Compl. (Doc. No. 18) ¶ 15.  Mr. Nicholas is particularly dedicated to catch-and-release fishing; he does not kill anything he catches.

Mr. Nicholas would like to leverage his outdoors and life experience to work as a fishing "guide" in New Hampshire.  As a fishing guide, Mr. Nicholas states that he would help his clients discover and enjoy fishing and New Hampshire's wilderness.  He plans to escort "select clients" on "multi-day immersive trips into the wilderness."  Id. ¶ 18.  "During these adventures," he will "speak, share and teach what [he has] learned from [his] decades of outdoor experience relating to fishing, camping, hiking, wilderness navigation, gourmet field cookery, safety, local history and generally living life as free from fear as possible."  Id.

New Hampshire requires anyone who "engages for hire" in the business of "guiding" to obtain a license from the Department's Executive Director.  RSA 207:1(XII)-(XIII) (defining "guide" and "guiding") & 215:1 ("No person shall engage in the business of guiding, until he has registered with the executive director and procured from him a license so to do.").  Guiding "[i]ncludes

every act whereby a person for hire directs, aids, assists or instructs another person in taking wildlife in" New Hampshire. RSA 207:1(XIII).  Guiding without a license is a criminal violation.  See RSA 215:9 ("Whoever violates any provision of RSA 215 or any rule or regulation of the executive director made thereunder, shall be guilty of a violation . . . .").

The Department has promulgated administrative rules setting forth the criteria and prerequisites under which it issues guide licenses.  See Fis Ch. 1300; RSA 215:2 ("The executive director shall prescribe rules and regulations under which such licenses shall be issued.").  The Department issues two general types of guide licenses: hunting and fishing.  Fis 1301.02(a).[3]  The licenses run year-to-year and expire on December 31.[4]

A guide license application must include, among other items, details of the applicant's age and physical attributes (e.g., height, weight, hair and eye color); a statement about whether the applicant will be using boats or canoes when guiding; a statement explaining the applicant's experience with

_____

[3] Each type of license is further divided into licenses for residents, residents over the age of 65, and nonresidents.  Fis 1301.02(a)(1)-(6).

[4] After a license has been issued to a first-time applicant, it "shall be renewed" unless the renewal applicant fails to submit the renewal fee; his residence does not permit renewal under the same license type; the license has been revoked; he has obtained a disqualifying criminal conviction; or he does not hold a current first aid or CPR certification.  See Fis 1301.04(b).

handling boats, canoes, motors, and "map and compass"; and a completed criminal history record information release form.  Id. 1301.03(a).

In addition, a first-time guide license applicant must pass both a written and oral practical skills examination.  See id. 1301.03(e).  But "[n]o applicant shall be approved to sit for a practical skills examination" unless he meets several prerequisites, including a minimum age (18) and completing certain first-aid courses.  Id. 1301.02(b).

For Mr. Nicholas, however, the only consequential examination prerequisite is that the applicant must have "a personal record free of any conviction for a felony at any time in any jurisdiction against the person or property of another, in accordance with RSA 159:3."[5]  Id. 1301.02(b)(3).[6]  The regulations do not provide any exception or waiver procedure for

---

[5] RSA 159:3 creates a felony offense for possession of certain weapons after having been convicted of "[a] felony against the person or property of another."

[6] In addition, the person must have a "personal record free of convictions in any jurisdiction for" misdemeanors within 5 years and fishing, hunting, or trapping violations within 2 years.  Id. 1301.02(b)(4).

that rule.[7]  Mr. Nicholas does not dispute that his 1991 New York second-degree manslaughter conviction disqualifies him.

Nonetheless, on September 16, 2022, Mr. Nicholas sent an email to the Department asking to be issued a fishing guide license.  Mr. Nicholas appears to have understood at the time that he was disqualified under Fis 1301.02(b)(3).  See Am. Compl. (Doc. No. 18) ¶ 26 ("Notwithstanding Defendants' regulations that absolutely and forever bar me, because of my 1991 felony conviction, from being licensed as a fishing guide in New Hampshire, I applied by email . . . .").  The same day, a Department employee replied, confirming that Fis 1301.02(b)(3) prohibits Mr. Nicholas from obtaining a guide license.  Mr. Nicholas inquired about whether he could appeal, but the employee told Mr. Nicholas that "[a]n appeal process does not exist for your particular situation."  Id. ¶ 27.  The employee wrote: "The administrative rule that I sent you is clear and that is what all decisions are based on."  Id.

Mr. Nicholas alleges that, nevertheless, on December 20, 2022, defendant Keith Jordan, who is the Department's Chief of

---

[7] When the Department denies a guide license application, the "application and fee" must be returned "without further action, subject to the right of the applicant to seek an appeal of the decision under Fis 1305."  Fis 1301.03(d)(2).  Fis 1305, however, only relates to an appeal process upon the revocation of an already issued guide license, so it is not relevant to Mr. Nicholas's case.

Law Enforcement, emailed him, asking him to complete the guide license application and to submit any necessary accompanying materials.  Mr. Jordan told Mr. Nicholas that a decision would be made about his eligibility for the license after he submitted the application.

The same day, Mr. Nicholas submitted the application materials, including a criminal history record information release form, $100 fee, and proof of first aid and CPR training. A couple months later, in late February 2023, Mr. Nicholas sent Mr. Jordan testimonials to his rehabilitation.

Mr. Jordan denied Mr. Nicholas's application in mid-March 2023.  In an email to Mr. Nicholas informing him about the decision, Mr. Jordan expressed regret that he could not work around Mr. Nicholas's conviction, writing: "I wanted to find a way to work around this, I just cannot."  Id. ¶ 33.  Mr. Jordan indicated that the Department, including Director Mason, had agreed that the rules could not be waived because of a fear that they would have to be waived for others, too.  Mr. Jordan also noted that the Department had consulted the New Hampshire "Guide's Association," which agreed that "we should not waive any rules to allow for this under the current situation" and that "the administrative rules are very clear and waiving those rules would open the door for other people or issues . . . ." Id. ¶ 34.

Mr. Nicholas then brought this lawsuit against Mr. Jordan and Director Mason.[8]  After defendants moved to dismiss the initial complaint, the court sua sponte granted Mr. Nicholas leave to file an amended complaint because he appeared to assert new claims in his opposition to the motion to dismiss.  Mr. Nicholas timely filed the Amended Complaint, in which he asserts the following eight claims:

- Count 1: The guide license regime's automatic disqualification of applicants with a felony conviction violates Mr. Nicholas's First Amendment rights, including freedom of speech, association, and "occupational choice";

- Count 2: The guide license regime's automatic disqualification of applicants with a felony conviction violates Mr. Nicholas's substantive due process rights under the Fourteenth Amendment, including "freedom from irrational, conscience-shocking Government decision-making";

- Count 3: The guide license regime lacks standards and time limits for issuing licenses, which gives decisionmakers "unbridled discretion," in violation of the First and Fourteenth Amendments;

---

[8] Mr. Nicholas also sought guide licenses in Maine and New York.  Maine denied Mr. Nicholas's application under a similar provision that allows its analogous executive agency to deny a license if a person "has been convicted of committing a crime in [Maine] or any other jurisdiction that is punishable by imprisonment for a term of one year." Nicholas v. Camuso, No. 23-cv-15-JAW, 2023 WL 3439546, at *1 (D. Me. May 12, 2023) (dismissing Mr. Nicholas's constitutional claims).  New York appears to have granted Mr. Nicholas's application after Mr. Nicholas brought a suit in the Northern District of New York.  See Doc. No. 23 at 1; Nicholas v. Seggos, No. 8:23-cv-463-GTS-CFH (N.D.N.Y. filed Mar. 22, 2023).

- Count 4: The guide license regime "lacks a meaningful administrative hearing or appeal process," in violation of the First Amendment and the procedural component of the Fourteenth Amendment's Due Process Clause;

- Count 5: The Department's denial of Mr. Nicholas's license application based on his felony conviction "and opposition from the New Hampshire guides' association," violates Mr. Nicholas's First Amendment rights and his substantive due process rights under the Fourteenth Amendment;

- Count 6: The Department's denial of Mr. Nicholas's license application based on his felony conviction "and opposition from the New Hampshire guides' association," violates Mr. Nicholas's Fourteenth Amendment substantive due process rights;

- Count 7: The denial of Mr. Nicholas's license application without a fair hearing or appeal violates Mr. Nicholas's Fourteenth Amendment procedural due process rights.

- Count 8: Defendants conspired to deprive Mr. Nicolas of the above-listed constitutional rights, in violation of 42 U.S.C. § 1985.

See Am. Compl. (Doc. No. 18) ¶¶ 48-55.[9]  Mr. Nicholas asks the court to declare that New Hampshire's guide licensing regime is unconstitutional; to enjoin the defendants from enforcing RSA 215:1 and 215:9; and to compensate him for damages.  Mr.

---

[9] In his initial complaint, Mr. Nicholas asserted a claim under the Privileges and Immunities Clause, U.S. Const. Art. IV § 2, cl. 1.  Although nominally referenced in the Amended Complaint, Mr. Nicholas no longer asserts any claim based on the Privileges and Immunities Clause.

Nicholas has filed a motion for preliminary injunctive relief, and defendants move to dismiss.

## Discussion

The court addresses defendants' motion to dismiss first and Mr. Nicholas's motion for preliminary injunction second.

## I.   Motion to Dismiss

In their motion to dismiss, defendants contend that the guide license regime does not violate Mr. Nicholas's First or Fourteenth Amendment rights.[10]  Mr. Nicholas objects (Doc. No. 20).  Defendants replied (Doc. No. 21), and Mr. Nicholas filed a surreply (Doc. No. 22).

### A.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges whether a complaint contains enough "factual matter" to show that the plaintiff has a plausible entitlement to relief under the prevailing law.  See Burt v. Bd. of Tr. of

---

[10] Defendants also argue that they are entitled to sovereign immunity to the extent that Mr. Nicholas seeks damages from them in their official capacities.  As Mr. Nicholas does not purport to seek damages from the defendants in their official capacities, the court does not address this argument.  See Am. Compl. (Doc. No. 18) ¶ 9 ("I also sue Defendants for money damages, in their individual or personal capacities."); Pl. Obj. (Doc. No. 20 at 2) ("Defendants are correct that, under existing Supreme Court precedent, Plaintiff cannot sue Defendants in their official capacities for damages. . . .  However, Plaintiff sues Defendants in their official capacities for declaratory and injunctive relief.").

Univ. of R.I., 84 F.4th 42, 50 (1st Cir. 2023).  In evaluating
whether the plaintiff has a plausible entitlement to relief, the
court must accept the complaint's factual allegations as true,
and it must draw all reasonable inferences in the plaintiff's
favor.  Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)).  Generally, the court may consider only the facts
alleged in the complaint, exhibits attached to the complaint,
and other materials that are fairly incorporated in the
complaint or are subject to judicial notice such as matters of
public record.  Lowe v. Mills, 68 F.4th 706, 713-14 (1st Cir.
2023); see Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013).

B.   Standing to Challenge Aspects of the Guide License
     Regime other than Fis 1301.02(b)(3)

As an initial matter, in Count 3, Mr. Nicholas asserts
challenges to aspects of the guide license regime other than Fis
1301.02(b)(3), which was the basis for defendants' denial of his
guide license application.  Specifically, Mr. Nicholas contends
that the guide license regime provides "unbridled discretion" to
the Department to deny (or delay) the issuing of licenses to
individuals who meet all regulatory requirements and that it
lacks standards for determining who passes the practical skills
examinations required for first-time applicants.

"[T]he irreducible constitutional minimum of standing
contains three elements." Lujan v. Defs. of Wildlife, 504 U.S.

11

555, 560 (1992). First, a plaintiff must demonstrate an injury in fact, which is a "concrete and particularized" "invasion of a legally protected interest." Id. Second, a causal connection must exist between the injury and the conduct complained of, meaning that the injury must be fairly traceable to the "challenged action of the defendant." Id. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id.

As to the aspects of the guide-license regime other than Fis 1301.02(b)(3), Mr. Nicholas suffered no injury-in-fact because the Department was required to deny his license application under Fis 1301.02(b)(3), and Mr. Nicholas's allegations show that it did so solely under that provision.

Mr. Nicholas nonetheless argues that he can challenge other aspects of the guide license regime under City of Lakewood v. Plain Dealer Publishing Company, 486 U.S. 750, 755-56 (1988), which relaxed the standard for establishing standing when a plaintiff is subject to a licensing scheme that burdens his First Amendment rights, gives an executive "unbridled discretion" to grant or deny licenses, and poses a "real and substantial threat of censorship." See Van Wagner Boston, LLC v. Davey, 770 F.3d 33, 35, 37-38 (1st Cir. 2014) (observing that courts have regularly "held that when a regulation is alleged to vest unbridled discretion in a government official to license a

12

plaintiff's expressive activity and to pose a real and substantial threat of censorship, the plaintiff need only be subject to that regulation to establish a cognizable injury in fact."); see also Forsyth Cty., Ga. v. Nationalist Movement, 505 U.S. 123, 130-31 (1992) (holding that a government licensing requirement that restricts the time, place, or manner of speech, but allows for arbitrary application of such restrictions may be invalid under the First Amendment due to potential for officials to use executive discretion to suppress a particular point of view).

Mr. Nicholas, however, does not obtain standing under Lakewood because he did not allege facts indicating that the discretion given to the Department under the guide license regime poses a real and substantial threat of any identified censorship.  See Osediacz v. City of Cranston, 414 F.3d 136, 141 (1st Cir. 2005).  For example, there is no allegation that the Department has ever denied a license application, or delayed a decision on any license application, when all regulatory criteria were met for any reason let alone because of a disagreement with a prospective guide's viewpoints.  Nor does Mr. Nicholas allege any facts about the practical skills examinations, including anything that indicates the examinations go beyond the judgment of practical skills.

In short, there is nothing alleged in Mr. Nicholas's complaint that plausibly suggests the guide license regime permits any sort of discretion that the Department might use as a back alley to censor him or other guides.  See id.; see also N. Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 26 (1st Cir. 2002) ("If and when a pattern of abuse emerges, that will be the time to deal with infelicitous applications of the regulations.").  As Mr. Nicholas lacks standing to challenge aspects of the guide license regime which did not result in his license application's denial, the District Judge should dismiss Count 3.  The court turns next to Mr. Nicholas's claims that Fis 1301.02(b)(3) violates his constitutional rights.

C.    First Amendment

Mr. Nicholas references the First Amendment and its protections for speech, association, and "occupational choice" in several of the claims in his Amended Complaint, although the primary vehicle for his First Amendment challenge appears to be Count 1.  Defendants move to dismiss any claim Mr. Nicholas brought under the First Amendment for failure to state a claim upon which relief can be granted.[11]  The court addresses Mr.

---

[11] Defendants also contend that Mr. Nicholas failed to identify what parts of the guide license regime he challenges. That argument lacks merit.  The primary target of Mr. Nicholas's First Amendment arguments – Fis 1301.02(b)(3) – is obvious, since that is the provision that disqualifies him.

Nicholas's arguments based on freedom of speech first, his arguments based on association second, and "occupational choice" third.

### 1. <u>Freedom of Speech</u>

In their motion to dismiss, defendants argue that, to the extent there is some protected speech at issue in this case, the guide license regime is content neutral and passes intermediate scrutiny because it supports a substantial government interest in public safety.

Mr. Nicholas objects.  He argues that the guide license regime should be subject to strict scrutiny because it is a content-based prior restraint on speech.  He also points to two recent circuit-level decisions which held license restrictions on tour guides violated the First Amendment: <u>Billups v. City of Charleston</u>, 961 F.3d 673 (4th Cir. 2020), and <u>Edwards v. District of Columbia</u>, 755 F.3d 996 (D.C. Cir. 2014).

"Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const., Amend. I.[12]  "Above 'all else, the First Amendment means that government generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  <u>Barr v. Am. Ass'n of Political</u>

---

[12] The Fourteenth Amendment makes the First Amendment applicable to the states.  <u>Nat'l Inst. of Fam. & Life Advocs. v. Becerra</u>, 585 U.S. ---, 138 S. Ct. 2361, 2371 (2018).

Consultants, Inc., 591 U.S. ---, 140 S. Ct. 2335, 2346 (2020)

(quoting Police Dep't of Chi. v. Mosley, 408 U.S. 92, 95

(1972)).

The starting point in examining whether a law violates the

First Amendment is to take stock of the law's purpose, context,

and effect, which generally determines against what standard the

restriction should be measured.  See id.  Content-based

restrictions – meaning rules that restrict expression depending

on its message – are subject to strict scrutiny, the most

exacting level of review, and they are presumed

unconstitutional.  See, e.g., McGuire v. Reilly, 260 F.3d 36, 43

(1st Cir. 2001); Cutting v. City of Portland, No. 13-cv-359-GZS,

2014 WL 580155, at *8 (D. Me. Feb. 12, 2014).

On the other hand, content-neutral regulations – generally

meaning regulations that do not turn on the speaker's message

and that were adopted for a reason other than the regulator's

disagreement with a particular message or speaker's viewpoint –

usually require less justification and are therefore subject to

lower demands known typically as intermediate scrutiny.

McGuire, 260 F.3d at 43; Globe Newspaper Co. v. Beacon Hill

Architectural Comm'n, 100 F.3d 175, 183 (1st Cir. 1996).

Finally, a law that regulates conduct and does not impose more

than an "incidental burden" on protected speech in doing so is

usually limited to rational basis review.  See Crownholm v.

Moore, 647 F. Supp. 3d 842, 856 (E.D. Cal. 2022) (finding that rational basis review applied to First Amendment challenge to land-surveyor licensing scheme that regulated "professional conduct with no more than an incidental burden on speech").

Fis 1301.02(b)(3) is a content-neutral regulation subject to, at most, intermediate scrutiny insofar as it imposes a more-than-incidental burden on protected speech.[13]  Fis 1301.02(b)(3) does not favor or disfavor any message, nor the viewpoint of any speaker, and there is no indication that it was promulgated for the purpose of limiting any particular message.  Rather, where it limits speech, it does so only based on the existence of message-agnostic factors: guiding for hire and possessing a personal record containing a certain type of felony conviction. Under these circumstances, intermediate scrutiny applies.  See City of New Orleans, La. v. Kagan, 753 F.3d 560, 562 (5th Cir. 2014) (upholding licensing regime for city tour guides after intermediate scrutiny), cert. denied, 135 S. Ct. 1403 (2015); Nicholas, 2023 WL 3439546, at *5 (finding analogous Maine regulation was subject to intermediate scrutiny because "the

---

[13] Defendants did not develop an argument in their renewed motion to dismiss that only rational basis review applies, so the court assumes that the regulation goes beyond an incidental limitation on protected speech.  See Billups, 961 F.3d at 683-84 (finding that regulation that "completely prohibits unlicensed tour guides from leading visitors on paid tours" "cannot be classified as a restriction on economic activity that incidentally burdens speech").

challenged licensing regulations are plainly content-neutral, as they do not disfavor any particular message and serve purposes unrelated to the content of expression"); see also Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 736 (1st Cir. 1995) (finding that regulation that limited when expressive activity could occur without reference to content and applied only in commercial context was "content neutral" and subject to intermediate scrutiny).  And Mr. Nicholas cited no case – and the court could not find one – that found an analogous occupational licensing restriction was content based and subject to strict scrutiny.[14]

Mr. Nicholas argues that strict scrutiny should apply because the guide license regime is a "prior restraint."  In this context, a "prior restraint" is "a law, regulation or judicial order that suppresses speech — or provides for its suppression at the discretion of government officials — on the basis of the speech's content and in advance of its actual

---

[14] There remains some uncertainty among circuit courts about what scrutiny applies to occupational licensing schemes that burden at least some protected speech alongside conduct, and the possibility that strict scrutiny may apply, in circumstances that warrant it, has not been ruled out.  Compare Billups, 961 F.3d at 684 (assuming intermediate scrutiny applies at minimum), and Edwards, 755 F.3d at 1001 (same), with Kagan, 753 F.3d at 561-62 (finding that intermediate scrutiny applies at most, but suggesting that no First Amendment scrutiny should apply), and Del Castillo v. Sec'y, Fla. Dep't of Health, 26 F.4th 1214, 1226 (11th Cir. 2022) (finding that no First Amendment scrutiny applies).

expression." Citizens United v. Schneiderman, 882 F.3d 374, 386-87 (2d Cir. 2018). "Facially content-neutral laws that require permits or licenses of individuals or entities engaged in certain forms of expression only constitute prior restraints when they (1) disallow that expression unless it has previous permission from a government official and (2) vest that official with enough discretion that it could be abused." Id. at 387. Fis 1301.02(b)(3) provides no discretion to officials that could be abused, as it categorically requires officials to deny licenses to anyone with a disqualifying felony. Therefore, it is not a prior restraint on speech, and Fis 1301.02(b)(3) is subject to intermediate scrutiny, at most.

To survive intermediate scrutiny, the challenged regulation must be narrowly tailored to serve a significant state interest. E.g., Rideout v. Gardner, 838 F.3d 65, 71-72 (1st Cir. 2016). "The dismissal of a claim challenging a law that abridges protected speech 'will rarely, if ever, be appropriate at the pleading stage. Instead, factual development will likely be indispensable to the assessment of whether [such a law] is constitutionally permissible.'" Cornelio v. Connecticut, 32 F.4th 160, 172 (2d Cir. 2022) (quoting Bruni v. City of Pittsburgh, 824 F.3d 357 (3d Cir. 2016)). "[T]he norm is to wait until the summary judgment stage of the litigation to address the ultimate question of whether the [restriction]

should stand." Id. (quoting Graff v. City of Chicago, 9 F.3d 1309, 1322 (7th Cir. 1993)); Narce v. Mervilus, No. 23-200 (BAH), 2023 WL 7128475, at *9 & n.4 (D.D.C. Oct. 30, 2023).

Mr. Nicholas has alleged sufficient facts for his First Amendment freedom-of-speech claim to survive defendants' motion to dismiss. In particular, Mr. Nicholas has plausibly alleged that the guide license scheme is not narrowly tailored. Considering only the limited set of facts before the court, Fis 1301.02(b)(3) may be overbroad because the Department could have crafted a more precise regulation that still furthers its asserted public safety purpose but does not burden the speech of those who possess disqualifying convictions and are rehabilitated and unlikely to pose any more danger to the public than any other person.

That fact distinguishes this motion to dismiss from the one addressed in Mr. Nicholas's Maine lawsuit, which the court granted given the Maine regulation's "combination of permissiveness, individualized determination, and opportunity for review." See Nicholas, 2023 WL 3439546, at *6-*7, (observing that Maine's regulations do "not presumptively or categorically bar convicted felons from receiving a license").[15]

---

[15] Additionally, Mr. Nicholas's case in the District of Maine is on appeal with the First Circuit, which may issue an opinion that affects the result or applicable analysis in this case.

By contrast, New Hampshire's guide license regime, with respect to Fis 1301.02(b)(3), appears to lack those features.

To be sure, defendants offer several reasons for why the regulation is narrowly tailored, but these arguments rely in part on facts that are not within the pleadings and that Mr. Nicholas has not had a chance to explore through discovery. Accordingly, the District Judge should deny defendants' motion to dismiss Mr. Nicholas's claims to the extent he alleges that Fis 1301.02(b)(3) violates the First Amendment's right to free speech.

### 2. Freedom of Association

Mr. Nicholas also purports to bring claims based on the First Amendment's guarantee of free association.  Defendants contend that Mr. Nicholas fails to allege any facts indicating how the guide license scheme violates his First Amendment right to association.  Mr. Nicholas did not offer any developed defense of his freedom-of-association claim in his objection.

"[I]mplicit in the right to engage in activities protected by the First Amendment" there is "a corresponding right to associate with others."  Ams. for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2382 (2021) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984)).  The Supreme Court has held that freedom of association may be violated if the government requires a group to add members it does not want; punishes

people for a political affiliation; or denies organization

members benefits based on the organization's message.  Id.

Fis 1301.02(b)(3) does not appear to implicate Mr.

Nicholas's associative rights under the First Amendment, and Mr.

Nicholas did not offer any developed argument in his objection

as to why it would.  Therefore, Mr. Nicholas's claims based on

the First Amendment's guarantee of free association should be

dismissed.

### 3.  Occupational Choice or Occupational Liberty

Mr. Nicholas also references a First Amendment right to

"occupational choice" or "occupational liberty."  Mr. Nicholas

did not cite any law indicating that the First Amendment

provides any right to occupational choice or liberty outside its

general protections for speech.  Accordingly, the District Judge

should dismiss Mr. Nicholas's claims to the extent they are

premised on a First Amendment right to "occupational choice" or

"occupational liberty."  The court separately discusses Mr.

Nicholas's "occupational liberty" claim to the extent it

implicates the Fourteenth Amendment's Due Process Clause below.

### D.  Substantive Due Process (Fundamental Right to Engage in an Occupation Without Restriction)

Next, as with Mr. Nicholas's allegations that defendants

violated the First Amendment, Mr. Nicholas references the

substantive component of the Fourteenth Amendment's Due Process

Clause in several different claims, including Counts 2, 5, and
6.  Defendants move to dismiss any claim based on substantive
due process, arguing that Mr. Nicholas's allegations do not
suffice to show conscience-shocking behavior and that a person
does not have fundamental right to engage in an occupation
without any state-imposed restrictions.[16]  Mr. Nicholas argues
that there is a 600-year history and tradition of such a right
and that the denial of his license on public safety grounds
bears no rational connection to the facts given his
rehabilitation.

First, to the extent Mr. Nicholas sought to bring a claim
based on executive government action, defendants' conduct in
following Fis 1301.02(b)(3), which required defendants to deny
his application to be denied and permits no exception, was not
conscience shocking.  See County of Sacramento v. Lewis, 523
U.S. 833, 846 (1998); Harron v. Town of Franklin, 660 F.3d 531,
536 (1st Cir. 2011).  The District Judge should dismiss any
claim Mr. Nicholas alleges on that premise.

---

[16] Mr. Nicholas may have referenced substantive due process
in some of the enumerated claims only because the Due Process
Clause incorporates of the First Amendment.  See Dobbs, 597 U.S.
at 237 (distinguishing between substantive due process as to rights
guaranteed by the "first eight Amendments" and those not expressly
asserted in the Constitution).  Having addressed the First
Amendment issue above, the court focuses in this section on Mr.
Nicholas's claims that the Constitution provides an implicit right
to engage in an occupation without state-imposed restrictions.

Second, Mr. Nicholas's substantive due process claims can also be framed as a challenge to the Department's promulgation of Fis 1301.02(b)(3) in its legislative capacity.  In examining whether a state statute or administratively promulgated rule, such as Fis 1301.02(b)(3), violates the substantive component of the Fourteenth Amendment's Due Process Clause, the court first asks whether the rule infringes on a fundamental right, meaning a right that courts have determined, through a historical analysis, is both "deeply rooted" in the United States's "history and tradition" and "implicit in the concept of ordered liberty."  See Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 231 (2022) (quoting Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997)).  If the regulation does not infringe on a fundamental right, it is subject only to rational basis review. See Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 107 (1st Cir. 2015) (citing FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)); accord Dobbs, 597 U.S at 300 ("[R]ational-basis review is the appropriate standard for such challenges.").  Further, a regulation that does not involve a fundamental right is entitled to "a strong presumption of validity," which the plaintiff must overcome.  See Beach Commc'ns, Inc., 508 U.S. at 314-15.

Courts do not recognize a fundamental right to engage in a profession without restriction.  See Mulero-Carrillo, 790 F.3d

at 107 (rejecting doctors' claim that license to practice
medicine is a fundamental right); <u>Medeiros v. Vincent</u>, 431 F.3d
25, 32-33 (1st Cir. 2005) ("The right to 'make a living' is not
a 'fundamental right,' for either equal protection or
substantive due process purposes."), <u>abrogated in part on other
grounds by</u>, <u>Bond v. United States</u>, 564 U.S. 211, 216 (2011).
Rather, courts, including the Supreme Court, typically subject
occupational licensing schemes that are premised on public
safety and challenged under the Fourteenth Amendment to
rational-basis review.  See <u>Schware v. Bd. of Bar Exam. of State
of N.M.</u>, 353 U.S. 232, 238-39 (1957) (applying rational basis
review to state's restrictions on license to practice law); <u>Dent
v. State of W. Va.</u>, 129 U.S. 114, 121-22 (1889) ("It is
undoubtedly the right of every citizen of the United States to
follow any lawful calling, business, or profession he may choose
. . .  [b]ut there is no arbitrary deprivation of such right
where its exercise is not permitted because of a failure to
comply with conditions imposed by the state for the protection
of society."); <u>Mulero-Carrillo</u>, 790 F.3d at 107; <u>Gonzalez-Droz
v. Gonzalez-Colon</u>, 660 F.3d 1, 9 (1st Cir. 2011); <u>see also</u> <u>N.Y.
State Trawlers Ass'n v. Jorling</u>, 16 F.3d 1303, 1311 (2d Cir.
1994) ("Persons engaged in an industry affecting the public
interest may be subject to state regulation, including licensing
schemes" if the terms are "rationally related to a legitimate

state interest such as 'the public health, safety, morals, or general welfare.'").  Rational-basis review therefore applies to Fis 1301.02(b)(3).  See Dobbs, 597 U.S at 300.

Fis 1301.02(b)(3) is supported by a rational basis, which is public safety.  On the premise of public safety, governments have long restricted the ability of those convicted of felonies to obtain licenses to engage in professions or business, even if the applicant can prove his rehabilitation.  See, e.g., Hawker v. People of New York, 170 U.S. 189, 197 (1898) ("Doubtless, one who has violated the criminal law may thereafter reform, and become in fact possessed of a good moral character.  But the legislature has power in cases of this kind to make a rule of universal application, and no inquiry is permissible back of the rule to ascertain whether the fact of which the rule is made the absolute test does or does not exist."); Darks v. City of Cincinnati, 745 F.2d 1040, 1042-44 (6th Cir. 1984) (finding that municipality had a rational basis to deny "dance hall licenses" to convicted felons); Wombles v. City of Mt. Washington, Ky., 2017 WL 927238, at *7-*8 (W.D. Ky. Mar. 8, 2017) (upholding, on rational basis review, city ordinance that prohibited granting business licenses to individuals convicted of a crime of "moral turpitude"); see also Miriam J. Aukerman, The Somewhat Suspect Class: Towards a Constitutional Framework for Evaluating Occupational Restrictions Affecting People with Criminal

Records, 7 J.L. Society 18, 24-25 (2005) (discussing past and present state and federal prohibitions on convicted felons from obtaining occupational licenses).  Further, as the court found in Mr. Nicholas's Maine case, the public safety purpose underlying Fis 1301.02(b)(3) is particularly "salient" given the nature of the guiding profession.  See Nicholas, 2023 WL 3439546, at *5.  That is, the state has a strong public safety and welfare interest in regulating guiding, which includes activities like overnight trips in the New Hampshire wilderness where those who employ guides are likely to be highly vulnerable to incompetence and malfeasance.

Mr. Nicholas contends that this public safety purpose of Fis 1301.02(b)(3) nonetheless lacks strength because an unlicensed person may still take people into the wilderness if he does not do so "for hire."  Likewise, he asserts that Fis 1301.02(b)(3) is overinclusive because it categorically precludes from guiding people like himself, who may pose no more a risk of future wrongdoing than anyone else.  While these over- and under-inclusiveness arguments may be more relevant for purposes of an intermediate scrutiny First Amendment analysis, they do not aid Mr. Nicholas on rational basis review.  Under rational basis review the court must defer to the state's judgments on those points so long as they are rational.  See Heller v. Doe ex rel. Doe, 509 U.S. 312, 320 (1993) ("[C]ourts

are compelled under rational-basis review to accept a
legislature's generalizations even when there is an imperfect
fit between means and ends.  A classification does not fail
rational-basis review because it 'is not made with mathematical
nicety or because in practice it results in some inequality.'");
Wombles, 2017 WL 927238, at *7 ("[E]ven if Plaintiffs are
correct that the Ordinance is, in some respects, overinclusive,
this does not defeat rational basis scrutiny.").[17]

The District Judge should grant defendants' motion to
dismiss Mr. Nicholas's substantive due process claims based on
the alleged fundamental right to engage in an occupation without
state-imposed restrictions, including Counts 2, 5, and 6.

### E.    Procedural Due Process

Next, as to Mr. Nicholas's claims that the guide license
regime violates his procedural due process rights, which are
Counts 4 and 7, defendants contend that even if they had
provided a hearing or appeal opportunity to Mr. Nicholas, it
would not have affected the result of Mr. Nicholas's license
application.  Mr. Nicholas responds that the guide license

---

[17] Heller and Wombles involved challenges under the Fourteenth
Amendment's Equal Protection Clause rather than the Due Process
Clause, but the First Circuit has observed that when the challenged
law does not infringe on a fundamental right (or involve a suspect
class) the rational-basis analysis for either type of claim is the
same.  Mulero-Carrillo, 790 F.3d at 107.

regime violates the procedural component of the Due Process
Clause because it does not provide fair hearings with procedural
and substantive safeguards.

Generally, the Fourteenth Amendment's Due Process Clause
requires a state to provide due process of law – meaning a
certain set of procedural protections – before it deprives a
person of a protected interest.  See Gonzalez-Fuentes v. Molina,
607 F.3d 864, 886 (1st Cir. 2010).  At the same time, the Due
Process Clause does not entitle a person to procedure for the
sake of procedure; rather, to state a claim a plaintiff must
identify some cognizable interest that he could realistically
obtain with the demanded process.  See Connecticut Dep't of
Public Safety v. Doe, 538 U.S. 1, 7 (2003) (holding that Due
Process Clause did not require state to provide a hearing where
its law required "all sex offenders—currently dangerous or not"
to provide information to sex-offender registry); Gilbert v.
Homar, 520 U.S. 924, 933 (1997) (observing that if a rule
"automatically" requires a particular outcome when an
"independently verifiable fact" exists, then there is no need
for the state to provide any process); Black v. Snow, 272 F.
Supp. 2d 21, 34 (D.D.C. 2003) ("[W]here the fact to be proven at
the hearing is not relevant to the legal scheme responsible for
the deprivation (that is, where it is clear that the government
would strip the individual of his liberty even if he were able

to prove or disprove the particular the fact or set of facts),
such a hearing would be an exercise in futility, which is not
required by procedural due process.").

Under Fis 1301.02(b)(3), the Department must deny a guide
license application made by anyone whose "personal record" is
not "free of any conviction for a felony . . . against the
person or property of another . . . ."  The regulations do not
give the Department any authority to waive or vary from that
rule.  And the New Hampshire Administrative Procedure Act
prohibits the Department from making ad hoc exceptions in the
absence of a rule-based waiver or variance procedure.  See RSA
541-A:22, IV ("No agency shall grant waivers of, or variances
from, any provisions of its rules without either amending the
rules, or providing by rule for a waiver or variance
procedure.").

Mr. Nicholas does not dispute that, at the time of his
application, his personal record was not free from a
disqualifying conviction.  Therefore, no matter what procedures,
hearings, or interviews defendants provided as to Mr. Nicholas's
application or what Mr. Nicholas can prove as to his
rehabilitation, Fis 1301.02(b)(3) required his application's
denial.  For this reason, Mr. Nicholas's procedural due process
claims, Counts 4 and 7, should be dismissed.  See Connecticut
Dep't of Safety, 538 U.S. at 7.

F.    Civil Rights Conspiracy, 42 U.S.C. § 1985(3)

Lastly, in Count 8, Mr. Nicholas asserts a claim that

defendants conspired to violate his civil rights, in violation

of 42 U.S.C. § 1985(3).  Defendants move to dismiss, arguing

that the facts do not show any conspiracy to violate Mr.

Nicholas's rights, particularly where defendants had no choice

but to deny Mr. Nicholas's application under Fis 1301.02(b)(3).

Mr. Nicholas did not respond.

"Section 1985(3) prohibits two or more persons in any State

or Territory from conspiring to deprive any person or class of

persons of the equal protection of the laws."  Perez-Sanchez v.

Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).  For a

claim under § 1985(3) to survive a motion to dismiss, the

plaintiff must allege facts demonstrating the existence of the

following four elements: (1) a conspiracy; (2) a "conspiratorial

purpose to deprive the plaintiff of the equal protection of the

laws"; (3) "an overt act in furtherance of the conspiracy"; and

(4) "either injury to person or property, or a deprivation of a

constitutionally protected right."  Id.  Further, § 1985(3)

requires the plaintiff to allege that the defendants had "some

racial, or perhaps otherwise class-based, invidiously

discriminatory animus" for their actions.  Parker v. Landry, 935

F.3d 9, 18 (1st Cir. 2019) (quoting Griffin v. Breckenridge, 403

U.S. 88, 102 (1971)).

31

Mr. Nicholas alleges no facts that show defendants had any conspiratorial purpose to deprive him of equal protection of the laws.  Rather, the only relevant allegations relate to a series of emails indicating that the defendants discussed Mr. Nicholas's guide license application among themselves and a third-party organization.  These emails are, at most, suggestive that defendants gave Mr. Nicholas's guide license application <u>more</u> consideration than was required, as the administrative rules demanded that the defendants reject Mr. Nicholas's guide license application in all events.  Furthermore, discriminating against convicted felons for public safety reasons is not considered "invidious."  <u>See</u> <u>Hill v. City of Chester</u>, No. CIV. A. 92-4357, 1993 WL 77249, at *6 (E.D. Pa. Mar. 18, 1993) ("The Supreme Court has never held that animus based on prior felony convictions satisfied the class-based invidious discriminatory practice necessary to state a cause of action.").  Mr. Nicholas's civil-rights conspiracy claim under § 1985 should be dismissed.

G.    <u>Summary of Conclusions</u>

In summary, the District Judge should dismiss all of Mr. Nicholas's claims except for Count 1 of the Amended Complaint to the extent Mr. Nicholas alleges that Fis 1301.02(b)(3), on its face or as applied to him, violates the First Amendment's right

to freedom of speech.  To the extent that Mr. Nicholas sought to challenge any aspect of the guide license regime other than Fis 1301.02(b)(3), which formed the basis for the Department's denial of his application, the District Judge should dismiss such claim without prejudice for lack of standing.

The court turns next to Mr. Nicholas's motion for preliminary injunction.

## II.  Motion for Preliminary Injunction

Mr. Nicholas moves for a preliminary injunction prohibiting defendants from enforcing the guide license scheme.  Defendants object, arguing that Mr. Nicholas has not shown a likelihood of success, irreparable harm, that the balance of equities favors him, or that the requested relief will not harm the public interest.

### A.   Standard of Review

A litigant is never entitled to preliminary injunctive relief as of right, and the relief is extraordinary in nature. Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  To obtain a preliminary injunction, the movant must show that (1) he is likely to succeed on the merits of the claim for which injunctive relief is available; (2) he is likely to suffer irreparable harm absent interim relief; (3) the balance of equities favors him; and (4)

providing the requested relief will not harm the public
interest. <u>Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.</u>, 969
F.3d 12, 22 (1st Cir. 2020); <u>Arborjet, Inc. v. Rainbow Treecare</u>
<u>Sci. Advancements, Inc.</u>, 794 F.3d 168, 171 (1st Cir. 2015).  The
movant bears the burden of establishing the factors in his
favor. <u>Nat'l Org. for Marriage v. Daluz</u>, 654 F.3d 115, 117, 119-
20 (1st Cir. 2011).

A common refrain from the First Circuit is that likelihood
of success on the merits is the "sine qua non" – i.e.,
indispensable – element such that "if the moving party cannot
demonstrate that he is likely to succeed in his quest, the
remaining factors become matters of idle curiosity." <u>E.g.</u>,
<u>Sindicato v. Puertorriqueño de Trabajadores v. Furtuño</u>, 699 F.3d
1, 7, 10 (1st Cir. 2012); <u>New Comm Wireless Servs. v. SprintCom,</u>
<u>Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002).  Further, the plaintiff
must show not that it is merely theoretically possible that he
prevails, but that there is a "strong likelihood" he does so.
<u>E.g.</u>, <u>Respect Maine PAC v. McKee</u>, 622 F.3d 13, 15 (1st Cir.
2010).

B.    <u>Strong Likelihood of Success</u>

In short, Mr. Nicholas has not demonstrated the "strong
likelihood" of success sufficient to justify entry of a sweeping
preliminary injunction prohibiting defendants from enforcing the

guide license regime or Fis 1301.02(b)(3).  While the court has
found that Mr. Nicholas's First Amendment freedom-of-speech
claim is sufficient to proceed beyond the motion to dismiss
stage, it does not inevitably follow that a claim which survives
dismissal has a strong likelihood of success.  See Billups v.
City of Charleston, 194 F. Supp. 3d 452, 478 (D.S.C. 2016)
(denying defendants' motion to dismiss First Amendment challenge
to city ordinance requiring licensing of tour guides and
plaintiff's motion for preliminary injunction prohibiting its
enforcement).

     Mr. Nicholas's primary argument as to likelihood of success
as to his First Amendment claim is that Fis 1301.02(b)(3) is
subject to strict scrutiny and is, therefore, presumptively
unconstitutional.  As discussed above, on the present record Fis
1301.02(b)(3) is, at most, subject to intermediate scrutiny.

     Although it is possible for Mr. Nicholas to prevail if the
intermediate scrutiny test applies because he may be able to
show that Fis 1301.02(b)(3) is not narrowly tailored, Mr.
Nicholas has not submitted evidence or persuasive arguments
demonstrating that there is a strong likelihood he will do so.
Furthermore, although the arguments on the issue have not been
well developed, the regulations may not impose anything more
than an incidental burden on speech, and the government's public
safety interest in this context is strong.  Under these

circumstances, occupational licensing regulations that limit
when a professional can supply individualized advice (as opposed
to publication of generalized advice) usually survive First
Amendment scrutiny.  See Lowe v. SEC, 472 U.S. 181, 228 (1985)
(White, J., concurring in the result) ("The power of government
to regulate the professions is not lost whenever the practice of
a profession entails speech. . . . [I]t has never been deemed an
abridgment of freedom of speech or press to make a course of
conduct illegal merely because the conduct was in part
initiated, evidenced, or carried out by means of language,
either spoken, written, or printed."); Crownholm, 647 F. Supp.
3d at 855-56 (discussing distinction between regulations aimed
at speech versus conduct).

Lastly, in similar circumstances, the District of South
Carolina declined to enjoin a tour-guide licensing scheme
challenged under the First Amendment.  As with the tour-guide
licensing scheme at issue there, Mr. Nicholas is free to engage
in any expression covered by the guide license regime except
when doing so for hire, so the licensing scheme "does not impose
an especially sizable burden on speech," and there is good
reason to believe the public interests the licensing scheme
seeks to protect (public safety) are legitimately at risk.  See
Billups, 194 F. Supp. 3d at 477-78.  And the state's interest in
safety at issue in this case is stronger than the interests in

promoting tourism that were involved in the cases most favorable to Mr. Nicholas's position, where courts struck down tour-guide licensing schemes.  Compare Edwards, 755 F.3d at 1009, and Billups, 961 F.3d at 682-84, with Nicholas, 2023 WL 3439546, at *5 (distinguishing Edwards and Billups on this ground).

Because likelihood of success is the most important factor in the preliminary injunction analysis, the court need not further explore whether Mr. Nicholas has demonstrated irreparable harm, whether the balance of equities favor him, or whether a preliminary injunction is in the public's interest. The District Judge should deny Mr. Nicholas's motion for preliminary injunction without prejudice.

## Conclusion

For the foregoing reasons the District Judge should grant in part and deny in part defendants' motion to dismiss (doc. no. 19).  Specifically, the District Judge should dismiss all claims except for Count 1 of the Amended Complaint insofar as Mr. Nicholas alleges that Fis 1301.02(b)(3) violates his right to speech under the First Amendment.  To the extent that Mr. Nicholas raises claims that other aspects of the guide license regime violate his constitutional rights, the District Judge should dismiss those claims without prejudice, including the claims asserted in Count 3.  The District Judge should deny Mr.

Nicholas's motion for preliminary injunction (doc. no. 3) without prejudice.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Only those issues raised in the objection(s) to this report and recommendation are subject to review in the district court.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by such objection(s) are precluded on appeal.  See id.  Failure to file specific written objections to the report and recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 28, 2023

cc:  Jason B. Nicholas, pro se
     Counsel of Record